IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-385-D

| | |
|---|---|
| GARY IRVIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| VERSATRIM, LLC, | ) |
| | ) |
| Defendant. | ) |

On July 21, 2023, Gary Irvin ("Irvin" or "plaintiff") filed a complaint against Versatrim, LLC ("Versatrim" or "defendant") alleging disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., failure to accommodate in violation of the ADA, retaliation in violation of the ADA, interference in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615, and retaliation in violation of the FMLA [D.E. 1]. On March 22, 2024, Versatrim moved for summary judgment [D.E. 19] and filed a memorandum in support [D.E. 20], a statement of material facts [D.E. 21], and an appendix of exhibits [D.E. 22]. On April 11, 2024, Irvin responded in opposition [D.E. 24] and filed a response statement of material facts [D.E. 25]. On April 25, 2024, Versatrim replied [D.E. 26] and filed a reply statement of material facts [D.E. 27]. As explained below, the court grants Versatrim's motion for summary judgment.

I.

Versatrim is a trim and molding manufacturer headquartered in Henderson, North Carolina. See Def.'s Statement of Material Facts ("DSMF") [D.E. 21] ¶ 1; Pl.'s Statement of Material Facts ("PSMF") [D.E. 25] ¶ 1. From October 2019 until April 14, 2023, Irvin worked for Versatrim.

See DSMF ¶ 7; PSMF ¶ 7. Irvin oversaw aspects of Versatrim's production of trim and molding and was responsible for stopping production if quality issues arose. Compare DSMF ¶¶ 9, 11, 34–35, with PSMF ¶ 9, 11, 34–35. Versatrim expected Irvin's team to produce approximately 2,500 pieces of material per line per day with a scrap rate of 10% or less. See DSMF ¶¶ 37–38; PSMF ¶¶ 37–38. High scrap rates result in a loss instead of a profit for Versatrim. See DSMF ¶ 39; PSMF ¶ 39.

Michael Williams ("Williams") was, at all relevant times, Versatrim's plant manager and Irvin's direct supervisor. See DSMF ¶ 12; PSMF ¶ 12. Brandi Parker ("Parker") was, at all relevant times, Versatrim's human resources ("HR") manager. See DSMF ¶ 13; PSMF ¶ 13. Viridiana Badillo ("Badillo") was, at all relevant times, an HR assistant at Versatrim. See DSMF ¶ 14; PSMF ¶ 14. Parker and Badillo handled FMLA leave and ADA accommodations at Versatrim. See DSMF ¶ 15; PSMF ¶ 15. Markus Schalkamp ("Schalkamp") was, at all relevant times, Williams's and Parker's supervisor. See DSMF ¶ 16; PSMF ¶ 16.

Before Irvin worked for Versatrim, Irvin injured his back while serving in the military. See DSMF ¶ 84; PSMF ¶ 84. Irvin was diagnosed with two bulging discs in the L4-L5 and L5-S1 regions of his back. See DSMF ¶ 85; PSMF ¶ 85. In August 2021, Irvin aggravated his back injury at work. See DSMF ¶ 86; PSMF ¶ 86. Irvin notified Versatrim of his injury and gave Versatrim HR a medical note that restricted his ability to repetitively lift weights greater than 40 pounds. See DSMF ¶¶ 87–88; PSMF ¶¶ 87–88.

Versatrim follows a progressive discipline model that includes a "working advisory, verbal advisory, or written advisory," or "some combination" thereof, along with a notification that the discipline can lead to termination. See DSMF ¶ 29; PSMF ¶ 29. Versatrim, however, can determine an offense is "egregious" and warrants immediate termination without earlier discipline.

2

See DSMF ¶ 29; PSMF ¶ 29. When Versatrim evaluates an employee for termination, it can consider all disciplinary actions the employee has received during his employment. Compare DSMF ¶ 31, with PSMF ¶ 31.

Irvin had a robust history of disciplinary actions. On March 1, 2021, Irvin received a written warning for giving unauthorized directions to employees that he did not supervise. See DSMF ¶ 57; PSMF ¶ 57. On December 5, December 15, and December 20, 2022, and January 5, January 18, and January 23, 2023, Irvin was tardy to work. Compare DSMF ¶ 59, with PSMF ¶ 59. On January 3, 2023, Irvin was a "no call no show." Compare DSMF ¶ 59, with PSMF ¶ 59. Irvin received multiple oral warnings about his punctuality. See DSMF ¶ 60; PSMF ¶ 60. Williams also repeatedly counseled Irvin on quality control issues on Irvin's production lines. Compare DSMF ¶ 61, with PSMF ¶ 61. On March 20, and April 5, 2023, Williams discussed defective materials with Irvin that Irvin's line produced and marked as viable but that did not meet Versatrim's specifications. Compare DSMF ¶¶ 63–64, with PSMF ¶¶ 63–64. On April 10, 2023, one of Irvin's line operators produced unusually few pieces of material with an unusually high scrap rate. Compare DSMF ¶¶ 67–68, with PSMF ¶¶ 67–68. On April 11, 2023, Williams told Irvin that Irvin should have stopped production, corrected the line operator, and informed Williams of the problem rather than let Williams discover the scrap rate the next day. Compare DSMF ¶¶ 69–73, with PSMF ¶¶ 69–73.

On April 12, 2023, Irvin told Parker and Badillo that he was scheduled for back surgery on May 19, 2023, and requested FMLA paperwork. See DSMF ¶ 91; PSMF ¶ 91. That day, Parker gave Irvin the initial FMLA form and told Irvin that his FMLA leave would be unpaid. See DSMF ¶¶ 92–93; PSMF ¶¶ 92–93. The same day, Irvin told Williams of his scheduled back surgery. See

3

DSMF ¶ 94; PSMF ¶ 94. Williams responded that his mother had a similar back surgery. Compare DSMF ¶¶ 94–95, 97, with PSMF ¶¶ 94–95, 97.

In April 2023, a German named Alik arrived at Versatrim to install splicers to Versatrim's production lines to reduce scrap rates. See DSMF ¶¶ 43–45; PSMF ¶¶ 43–45. Alik also trained Irvin, Williams, and others on how to use the splicers. Compare DSMF ¶¶ 46–48, with PSMF ¶¶ 46–48. On April 13, 2023, Irvin worked overtime to finish a production line with the splicers. Compare DSMF ¶ 75; PSMF ¶ 75. Irvin marked all the material from that production run as viable, usable material. Compare DSMF ¶¶ 76, 81, with PSMF ¶¶ 76, 81. On April 14, 2023, Williams discovered that most of the pieces actually were scrap, not usable material. Compare DSMF ¶¶ 78–80, with PSMF ¶¶ 78–80. The same day, Versatrim terminated Irvin's employment. Compare DSMF ¶ 102, with PSMF ¶ 102. Williams initiated Irvin's termination, and Schalkamp and Parker agreed with the decision. See DSMF ¶ 108; PSMF ¶ 108.

II.

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Scott v. Harris, 550 U.S. 372, 378, 380 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (cleaned up). A trial court reviewing a motion for

summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Harris, 550 U.S. at 378.

A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. See Anderson, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position [is] insufficient . . . ." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that affect the outcome under substantive law properly preclude summary judgment. See Anderson, 477 U.S. at 248.

A.

Irvin alleges Versatrim discriminated against him based on a disability in violation of the ADA. See Compl. ¶¶ 43–51. Under the ADA, a covered employer may not discriminate "against a qualified individual on the basis of a disability." 42 U.S.C. § 12112(a). Irvin has no direct evidence of illegal discrimination under the ADA and relies on the McDonnell Douglas burden-shifting framework. See Raytheon Co. v. Hernandez, 540 U.S. 44, 49 n.3 (2003). Under the McDonnell Douglas framework: "(1) the plaintiff must first establish a prima facie case of employment discrimination or retaliation; (2) the burden of production then shifts to the employer to articulate a non-discriminatory or non-retaliatory reason for the adverse action; (3) the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the stated reason for the adverse employment action is a pretext and that the true reason is discriminatory or

5

retaliatory." Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 216 (4th Cir. 2016) (citation omitted).

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence that the adverse employment action was "for a legitimate, nondiscriminatory reason." Tex. Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 254 (1981). This burden is one of production, not persuasion. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509–11 (1993). If the defendant offers admissible evidence sufficient to meet its burden of production, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were merely a pretext for discrimination. See, e.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000); King v. Rumsfeld, 328 F.3d 145, 150–54 (4th Cir. 2003).

To survive summary judgment on his ADA termination claim, Irvin must "produce evidence sufficient to demonstrate that (1) he was a qualified individual with a disability; (2) he was discharged; (3) he was fulfilling his employer's legitimate expectations at the time of discharge; and (4) the circumstances of his discharge raise a reasonable inference of unlawful discrimination." Reynolds v. Am. Nat'l Red Cross, 701 F.3d 143, 150 (4th Cir. 2012) (cleaned up); see Rohan v. Networks Presentations LLC, 375 F.3d 266, 272 n.9 (4th Cir. 2004); Rhoads v. F.D.I.C., 257 F.3d 373, 387 n.11 (4th Cir. 2001); Haulbrook v. Michelin N. Am., Inc., 252 F.3d 696, 702 (4th Cir. 2001).

Versatrim argues that Irvin fails to demonstrate that he was a "qualified individual with a disability" under the ADA. [D.E. 20] 15–16. Irvin cites his "bulging disks in the L4 to L5 and L5-S1 region" as his disability. [D.E. 24] 15; see id. at 14–16; [D.E. 22-4] 3. Versatrim replies that Irvin fails to cite evidence that his bulging discs are a "disability" under the ADA. See [D.E. 26] 5–7.

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities . . .; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))." 42 U.S.C. § 12102(1); see 29 C.F.R. § 1630.2(g)(1). Section 12102(3), in turn, states:

> For purposes of paragraph (1)(c):
>
> (A) An individual meets the requirements of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.
>
> (B) Paragraph 1(c) shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less.

42 U.S.C. § 12102(3). Under section 12102(3), as amended by the ADA Amendments Act of 2008, Pub. L. No. 110–325, 122 Stat. 3553 ("ADAAA"), an individual bringing a "regarded as" claim need only show that an employer subjected him to an action that the ADA prohibits because of an actual or perceived impairment regardless of whether the employer perceived the impairment to limit the individual in a major life activity. See 42 U.S.C. § 12102(3); 29 C.F.R. § 1630.2(g)(iii); Olsen v. Cap. Region Med. Ctr., 713 F.3d 1149, 1154 (8th Cir. 2013); Gecewicz v. Henry Ford Macomb Hosp. Corp., 683 F.3d 316, 321–23 (6th Cir. 2012); Harris v. Reston Hosp. Ctr., LLC, No. 1:10-CV-1431, 2012 WL 1080990, at *4–6 (E.D. Va. Mar. 26, 2012) (unpublished). Thus, a "regarded as" claim under the ADAAA is much easier to prove than a "regarded as" claim before the ADAAA. Cf. Rohan, 375 F.3d at 277–78 (analyzing a pre-ADAAA "regarded as" claim); Pollard v. High's of Balt., Inc., 281 F.3d 462, 471 n.5 (4th Cir. 2002) (same); Davis v. Univ. of N.C., 263 F.3d 95, 99–101 (4th Cir. 2001) (same); Rhoads, 257 F.3d at 390–91 (same); Haulbrook, 252 F.3d at 703–05 (same).

7

Irvin cites evidence that his bulging discs limited his ability to lift anything heavier than 40 pounds. See [D.E. 22-4] 5–6; compare DSMF ¶ 90, with PSMF ¶ 90. Irvin's job responsibilities did not include lifting more than 40 pounds. See [D.E. 22-12] ¶ 7; see also [D.E. 22-4] 6 (noting that shortly after Irvin received the lifting limitation, Versatrim promoted Irvin). Thus, Irvin's lifting restriction by itself does not constitute a substantial limitation of a major life activity under the ADA. See, e.g., Lyons v. Shinseki, 454 F. App'x 181, 183 (4th Cir. 2011) (per curiam) (unpublished); Daye v. Sch. Bd. of City of Norfolk, 18 F. App'x 125, 127 (4th Cir. 2001) (per curiam) (unpublished); Cox v. Civista Med. Ctr., 16 F. App'x 185, 185–86 (4th Cir. 2001) (per curiam) (unpublished); Williams v. Channel Master Satellite Sys., Inc., 101 F.3d 346, 349 (4th Cir. 1996) (per curiam), abrogated on other grounds by Baird ex rel. Baird v. Rose, 192 F.3d 462 (4th Cir. 1999); Swann v. US Foods, Inc., No. 1:14-CV-1409, 2015 WL 3793739, at *5 & n.6 (E.D. Va. June 17, 2015) (unpublished); cf. 29 C.F.R. subt. B, ch. XIV, pt. 1630, app. (2016) (advising that a "person would be substantially limited in working" only if his "job requires heavy lifting [but he] develops a disability that prevents him . . . from lifting more than fifty pounds").

Irvin fails to cite evidence that his bulging discs substantially impair any other major life activity. Cf. Brady v. Bd. of Educ. of Prince George's Cnty., 222 F. Supp. 3d 459, 468–69 (D. Md. 2016). Accordingly, Irvin's disability-discrimination claim fails under the "actual" or "record of" prongs of the ADA. See 42 U.S.C. § 12102(1)(A)–(B).

As for the "regarded as" prong, Irvin argues that Versatrim regarded him as having a disability because when Versatrim transferred Irvin to the warehouse, he told Schalkamp and Williams about his bulging discs. See [D.E. 24] 15–16; [D.E. 22-4] 4. "The fact that an employer is aware of an employee's impairment, without more, is insufficient to demonstrate . . . that the employer regarded the employee as disabled . . . ." Haulbrook, 252 F.3d at 703 (quotation

8

omitted); see Taylor v. Revature, LLC, No. 1:22-CV-1153, 2023 WL 6445857, at *6 (E.D. Va. Sept. 28, 2023) (unpublished); Everett v. Horry Cnty. Police Dep't, No. 4:21-CV-1764, 2023 WL 6307401, at *6 (D.S.C. Sept. 28, 2023) (unpublished); Knight v. McCarthy, 439 F. Supp. 3d 744, 760 (E.D. Va. 2020) (quotation omitted); cf. Neal v. E. Carolina Univ., 53 F.4th 130, 150 (4th Cir. 2022) (applying Haulbrook to an ADA claim post-ADAAA).

"[W]hen an employee asserts . . . that he was regarded as disabled, the analysis focuses on the reactions and perceptions of the employer's decisionmakers who worked with the employee." Wilson v. Phoenix Specialty Mfg. Co., 513 F.3d 378, 385 (4th Cir. 2008) (cleaned up). Schalkamp and Williams assured Irvin that his bulging discs would not be an issue. See [D.E. 22-4] 4. Williams "never thought of [Irvin] or treated [Irvin] as disabled," and Irvin performed his job responsibilities without any issues. [D.E. 22-12] ¶ 7; see also id. at ¶ 6. Accordingly, even viewing the evidence in the light most favorable to Irvin, no rational jury could find that Versatrim regarded Irvin as "disabled" under the ADA. See, e.g., Everett, 2023 WL 6307401, at *5–6. Thus, the court grants Versatrim summary judgment on Irvin's ADA disability-discrimination claim.

Alternatively, McDonnell Douglas "places upon the defendant the burden of producing an explanation to rebut the prima facie case." Hicks, 509 U.S. at 506–07. "The defendant must clearly set forth, through the introduction of admissible evidence," a legitimate, nondiscriminatory reason for the adverse employment action. Burdine, 450 U.S. at 255.

Versatrim argues Irvin was "not performing his job to the reasonable expectations of Versatrim at the time of his termination." [D.E. 20] 16. Irvin responds that the "record is replete with evidence that discredits [Versatrim]'s purported legitimate nondiscriminatory reason for terminating [Irvin]'s employment." [D.E. 24] 12; see id. at 12–14. Versatrim responds that even viewing the evidence in the light most favorable to Irvin, Irvin fails to forecast evidence that he

9

was meeting Versatrim's job expectations or that Versatrim's decision to terminate his employment was pretextual. See [D.E. 26] 8–9.

Versatrim forecasts evidence that it issued Irvin several written and oral warnings concerning his work performance in the months before terminating his employment. See, e.g., [D.E. 22-7] 5. Irvin's performance issues included time and attendance violations and quality control problems on his production lines. See, e.g., [D.E. 22-12] ¶¶ 11–15. For example, Irvin was tardy to work on December 5, December 15, and December 20, 2022, and January 5, January 18, and January 23, 2023. See [D.E. 22-14] 2. On January 3, 2023, Irvin was a "no call no show." See id. On March 20, 2023, Williams and Irvin discussed defective materials from Irvin's line that did not meet Versatrim's standards, but Irvin labeled them viable and sent them to a secondary location. See [D.E. 22-4] 11; [D.E. 22-12] ¶ 14.b. On April 5, 2023, Williams and Irvin again discussed defective materials that Irvin's line produced and labeled viable. See [D.E. 22-4] 12–14; [D.E. 22-12] ¶ 14.d. On April 10, 2023, Irvin's line produced an unusually high amount of scrap material. See [D.E. 22-4] 14–15; [D.E. 22-11]. On April 11, 2023, Williams learned of the unusually high amount of scrap material from the day before and was troubled that Irvin allowed production to continue. See [D.E. 22-4] 14–15; [D.E. 22-11]. On April 13, 2023, Irvin worked overtime to supervise a line of production. See [D.E. 22-4] 17. Irvin labeled all material produced on April 13, 2023, as viable material. See [D.E. 22-6] 4–5. The next day, Williams examined the material and concluded most of it was scrap material, not viable material. See [D.E. 22-12] 6. Versatrim considered firing and replacing Irvin for months before it terminated Irvin's employment due to Irvin's job performance. See [D.E. 22-6] 4. Accordingly, Versatrim forecasts evidence that Irvin was not meeting Versatrim's legitimate expectations when Versatrim fired him, and Versatrim also has demonstrated a legitimate, nondiscriminatory reason for terminating Irvin's

10

employment. See, e.g., King, 328 F.3d at 151 (accepting as a "legitimate, non-retaliatory discharge motive" that the employee "was not meeting [employer]'s job performance expectations"); Wood v. Town of Warsaw, 914 F. Supp. 2d 735, 743 (E.D.N.C. 2012) ("[A]n employer lawfully can rely on [performance] in making an employment decision.").

In opposition to this conclusion, Irvin contends that Versatrim employs a "progressive discipline process wherein an employee is issued a working advisory, a verbal advisory, and then a written advisory before" termination. [D.E. 24] 12. Irvin argues that Versatrim's reasons for firing him are pretextual because he received only one written warning before his termination, in violation of the progressive discipline process. See id. Moreover, Irvin argues Williams had "superseding authority to stop production lines." Id. at 13. Thus, according to Irvin, Versatrim's cited issues with Irvin's job performance are an "attempt to shift responsibility" onto Irvin as pretext for his termination. Id.

Even viewing the evidence in the light most favorable to Irvin, the court rejects Irvin's arguments. Irvin cites Parker's deposition testimony to support his argument that he received only one written warning before his termination. See [D.E. 24] 12; PSMF ¶¶ 51–52, 54–56, 58–59, 61. Parker, however, testified that she could only find one written warning in Irvin's personnel file with Irvin's signature, but she knew Versatrim gave Irvin other warnings, "verbals and writtens, and meetings were had with him." [D.E. 22-7] 5. Moreover, Williams testified that Irvin had the primary authority to stop production when errors occurred, and that Williams was merely "the last line of defense." [D.E. 22-6] 7. Williams also testified he could not do his job and Irvin's job at the same time. See id. at 4. Furthermore, Versatrim forecasts evidence that Williams left work on April 13, 2023, before Irvin's overtime shift. See id. at 7. Thus, Williams could not have corrected

11

Irvin's quality errors when they occurred that night. Accordingly, the court rejects Irvin's arguments and grants Versatrim summary judgment on Irvin's ADA discrimination claim.

B.

Irvin alleges Versatrim failed to accommodate his disability in violation of the ADA. See Compl. ¶¶ 52–60. Versatrim argues that this claim is time-barred because Irvin told Versatrim of his lifting restriction in August 2021, 22 months before he filed his EEOC charge of discrimination. See [D.E. 20] 16–17. Irvin responds that his relevant "request for accommodation" was his request for "FMLA leave on April 12, 2023," which falls "within the time limits to file an EEOC charge." [D.E. 24] 16.

To the extent Irvin relies on his request for FMLA leave to constitute an ADA request for accommodation, the court rejects this argument. See, e.g., Waggel v. George Washington Univ., 957 F.3d 1364, 1373 (D.C. Cir. 2020) ("[W]e reject [plaintiff]'s argument that her requests for FMLA leave should have been construed as requests for an ADA accommodation."); Acker v. Gen. Motors, L.L.C., 853 F.3d 784, 791 (5th Cir. 2017) ("[A] request for FMLA leave is not a request for a reasonable accommodation under the ADA."); Preddie v. Bartholomew Consol. Sch. Corp., 799 F.3d 806, 815 (7th Cir. 2015) (per curiam) ("[Plaintiff's] periodic requests for his own health-related leave . . . , without more, does not qualify as 'protected activity' under the ADA."); McCormack v. Blue Ridge Behav. Healthcare, 523 F. Supp. 3d 841, 858 (W.D. Va. 2021), aff'd, No. 21-1447, 2022 WL 16630565 (4th Cir. Nov. 2, 2022) (per curiam) (unpublished); Sowers v. Bassett Furniture Indus., Inc., No. 4:19-CV-39, 2021 WL 276169, at *7 n.7 (W.D. Va. Jan. 27, 2021) (unpublished) ("[Plaintiff] says his request for FMLA leave was a protected activity, which it is under the FMLA, but requesting FMLA leave is not a protected activity under the ADA."); cf. Reynolds, 701 F.3d at 154 ("Filing a workers' compensation claim is not something that is covered

12

by the ADA, but rather by retaliation provisions under state law."). But see Capps v. Mondelez Glob., LLC, 847 F.3d 144, 156–57 (3d Cir. 2017) (observing that a request for FMLA leave may, under certain circumstances, constitute ADA-protected activity and holding that the district court erred by concluding otherwise). This court agrees with the weight of authority that a request for FMLA leave is not, by itself, a request for a reasonable accommodation under the ADA. Accordingly, Irvin cannot use his request for FMLA leave as his ADA request for accommodation.

Alternatively, to the extent Irvin relies on his lifting restriction to assert his ADA failure-to-accommodate claim, the claim is time-barred. The ADA incorporates the administrative enforcement provisions of Title VII of the Civil Rights Act of 1964 ("Title VII"), including the requirement that a plaintiff exhaust his administrative remedies by timely filing a charge with the EEOC concerning the alleged discrimination before filing suit in federal court. See 42 U.S.C. §§ 2000e-5(e)(1), 12117(a); Sydnor v. Fairfax Cnty., 681 F.3d 591, 593 (4th Cir. 2012); Manning v. N.C. State Univ., ___ F. Supp. 3d ___, 2024 WL 1183066, at *3 (E.D.N.C. Mar. 19, 2024); Williams v. N.C. Admin. Off. of the Cts., 364 F. Supp. 3d 596, 601 (E.D.N.C. 2018); Thiessen v. Stewart-Haas Racing, LLC, 311 F. Supp. 3d 739, 743 (M.D.N.C. 2018). The requirement to file a charge with the EEOC serves "two principal purposes." Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 406–07 (4th Cir. 2013). "First, it notifies the charged party of the asserted violation." Id. (quotation omitted). Second, "it brings the charged party before the EEOC and permits effectuation of the [ADA]'s primary goal, the securing of voluntary compliance with the law." Id. (quotation omitted).

Irvin had to file an EEOC charge within 180 days of each alleged discrete act of discrimination under Title I of the ADA. See 42 U.S.C. §§ 2000e-5(e)(l), 12117(a). The 180-day time requirement is not jurisdictional and is subject to waiver, estoppel, and equitable tolling. See

13

Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982). Although the timeliness of administrative exhaustion is not jurisdictional, the failure to file an EEOC charge at all concerning the alleged discrimination can bar an ADA claim. See, e.g., Fort Bend Cnty. v. Davis, 139 S. Ct. 1843, 1850–52 (2019). Such a failure results in loss of an "actionable" claim and "the ability to recover." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110, 113 (2002), superseded by statute on other grounds, Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5; Davis, 139 S. Ct. at 1851–52. Moreover, "only incidents that took place within the timely filing period are actionable." Morgan, 536 U.S. at 114; see Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618, 623–24 (2007), superseded by statute on other grounds, Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5; Hentosh v. Old Dominion Univ., 767 F.3d 413, 417 (4th Cir. 2014), abrogated on other grounds by Davis, 139 S. Ct. 1843; Cooper v. Smithfield Packing Inc., No. 5:10-CV-479, 2011 WL 3207912, at *3 (E.D.N.C. July 27, 2011) (unpublished).

On June 10, 2023, Irvin filed his EEOC charge. See [D.E. 22-2]. Thus, only discrete acts of discrimination that occurred on or after December 12, 2022, are actionable under the ADA. Irvin's EEOC charge alleges that in August 2021, Irvin aggravated his back injury, but Versatrim ignored his "request for work restrictions." Id. To the extent Irvin relies on this incident to assert his ADA failure-to-accommodate claim, the claim is time-barred. The court grants Versatrim summary judgment on this claim.

C.

Irvin alleges Versatrim retaliated against him in violation of the ADA. See Compl. ¶¶ 61–66. The McDonnell Douglas burden-shifting framework applies to this claim. See, e.g., Jones v. Wells Fargo Home Mortg., Inc., No. 5:16-CV-952, 2018 WL 6272897, at *6 (E.D.N.C. Nov. 30, 2018) (unpublished) (collecting cases). Irvin must cite evidence establishing: (1) he engaged in

14

protected conduct; (2) he experienced an adverse employment action; and (3) a causal link exists between the protected conduct and the adverse employment action. See Burlington N. & Sante Fe Ry. v. White, 548 U.S. 53, 67–70 (2006); Reynolds, 701 F.3d at 154; A Soc'y Without a Name v. Virginia, 655 F.3d 342, 350 (4th Cir. 2011); Rhoads, 257 F.3d at 392; Haulbrook, 252 F.3d at 706; Williams v. Brunswick Cnty. Bd. of Educ., 725 F. Supp. 2d 538, 548 (E.D.N.C. 2010).

Irvin relies on his request for FMLA leave as his ADA-protected activity to support his ADA retaliation claim. See [D.E. 24] 17. As discussed, requesting FMLA leave is not protected activity under the ADA. Alternatively, Versatrim has demonstrated a legitimate reason for terminating Irvin, and Irvin fails to create a genuine dispute of material fact that Versatrim's reason was pretextual. Accordingly, the court grants Versatrim summary judgment on Irvin's ADA retaliation claim. See, e.g., Ali v. WorldWide Language Res., LLC, ___ F. Supp. 3d ___, 2023 WL 5120224, at *17 (E.D.N.C. Aug. 9, 2023).

D.

Irvin alleges Versatrim interfered with his exercise of FMLA rights. See Compl. ¶¶ 30–36. The FMLA entitles employees to take "reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(2). The FMLA allows eligible employees to take a total of twelve workweeks of unpaid leave during any twelve-month period due to "a serious health condition that makes the employee unable to perform the functions of the position of such employee." Id. § 2612(a)(1)(D). Generally, after taking FMLA leave, employees may return to their pre-leave job or an equivalent position. See id. § 2614(a)(1)(A)–(B); Fry v. Rand Constr. Corp., 964 F.3d 239, 244 (4th Cir. 2020). Interference claims stem from section 2615(a)(1), which states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right

15

provided under this subchapter." 29 U.S.C. § 2615(a)(1); see Fry, 964 F.3d at 244; Waag v. Sotera Def. Sols., Inc., 857 F.3d 179, 186 (4th Cir. 2017).

"To prove FMLA interference, an employee must demonstrate that (1) [he is] entitled to an FMLA benefit; (2) [his] employer interfered with the provision of that benefit; and (3) that interference caused harm." Roberts v. Gestamp W. Va., LLC, 45 F.4th 726, 732 (4th Cir. 2022) (cleaned up); see Adams v. Anne Arundel Cnty. Pub. Schs., 789 F.3d 422, 427 (4th Cir. 2015). "The FMLA provides no relief unless the employee has been prejudiced by the violation." Vannoy v. Fed. Rsrv. Bank of Richmond, 827 F.3d 296, 302 (4th Cir. 2016) (quotation omitted); see Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002). Thus, "an employer may avoid liability if it shows it would have taken the contested adverse employment action regardless of the employee's FMLA leave." Roberts, 45 F.4th at 732–33; see Hannah P. v. Haines, 80 F.4th 236, 244 (4th Cir. 2023); Yashenko v. Harrah's NC Casino Co., 446 F.3d 541, 547 (4th Cir. 2006).

Versatrim argues Irvin fails to cite evidence that Versatrim or any of its agents unlawfully interfered with Irvin's FMLA leave. See [D.E. 20] 5–10. Irvin responds that Versatrim interfered with his taking FMLA leave by terminating his employment before he could take FMLA leave. See [D.E. 24] 6–9. Versatrim replies that it had a legitimate reason for terminating Irvin. See [D.E. 26] 1–5.

Versatrim terminated Irvin's employment after he requested FMLA leave but before he could take FMLA leave. See [D.E. 22-4] 6, 18; [D.E. 22-7] 5.[1] The court assumes without deciding that Versatrim's conduct constitutes prima facie FMLA interference. As discussed,

---

[1] The parties also dispute whether other Versatrim employees tried to discourage Irvin from taking FMLA leave in various conversations. See Compl. ¶¶ 20, 22; [D.E. 20] 6–7; [D.E. 24] 8; [D.E. 26] 1–2. The court need not decide whether there is a genuine dispute of material fact about these conversations because Versatrim has shown a legitimate reason for terminating Irvin's employment.

16

however, Versatrim forecasts evidence that it had a legitimate reason for terminating Irvin and would have terminated Irvin regardless of his FMLA request. See, e.g., [D.E. 22-6] 4–5. Accordingly, the court grants Versatrim summary judgment on Irvin's FMLA interference claim. See, e.g., Fry, 964 F.3d at 249; Cianci v. Pettibone Corp., 152 F.3d 723, 728–29 (7th Cir. 1998); Ahmarani v. Sieling & Jones, Inc., 211 F. Supp. 2d 658, 660–61 & n.4 (D. Md. 2002).

E.

Irvin alleges Versatrim retaliated against him in violation of the FMLA. See Compl. ¶¶ 37–42. The McDonnell Douglas burden-shifting framework applies to this claim. See, e.g., Roberts, 45 F.4th at 738. "To establish a prima facie case of FMLA retaliation, a plaintiff must demonstrate that (1) [he] engaged in a protected activity; (2) [his] employer took an adverse employment action against [him]; and (3) there was a causal link between the two events." Id. (quotation omitted); see Hannah P. v. Coats, 916 F.3d 327, 347 (4th Cir. 2019).

The court assumes without deciding that Irvin has forecast evidence establishing his prima facie case for FMLA retaliation. See DSMF ¶¶ 91, 102; PSMF ¶¶ 91, 102. As discussed, Versatrim has demonstrated a legitimate reason for terminating Irvin's employment, and Irvin fails to create a genuine issue of material fact concerning pretext. Accordingly, the court grants Versatrim summary judgment on Irvin's FMLA retaliation claim. See, e.g., Hanna P., 916 F.3d at 347–48 & n.10.

III.

In sum, the court GRANTS defendant's motion for summary judgment [D.E. 19]. Defendant may file a motion for costs in accordance with the Federal Rules of Civil Procedure and this court's local rules. The clerk shall close the case.

17

SO ORDERED. This 12 day of June, 2024.

*/s/ James C. Dever*
JAMES C. DEVER III
United States District Judge